[Cite as *Watts v. Sawadogo*, 2026-Ohio-3024.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

MIGUEL STEPHAN WATTS, :

  Plaintiff-Appellant, :

            No. 115853

  v. :

FATOUMATA SAWADOGO, :

  Defendant-Appellee. :

---

**JOURNAL ENTRY AND OPINION**

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 6, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-24-401703

---

***Appearances:***

Miguel Stephan Watts, *pro se*.

EMANUELLA D. GROVES, P.J.:

{¶ 1} Plaintiff-appellant Miguel Stephan Watts ("Watts"), pro se, appeals the trial court's judgment entry of divorce, which designated defendant-appellee Fatoumata Sawadogo ("Sawadogo") the residential parent and legal custodian of the parties' children after adopting the magistrate's findings of fact regarding their best interests. Upon review, we affirm the trial court's decision.

## I. Facts and Procedural History

{¶ 2} In October 2024, Watts filed a complaint for annulment and Sawadogo filed an answer. Watts acted pro se throughout the underlying proceedings and filed various motions, notices, and briefs, including motions for custody of the parties' minor children. Watts later amended his complaint, seeking an annulment based on marriage fraud; an emergency order for the children's immediate return to his custody; the assistance of local police; restoration of the children's education and healthcare; and punitive relief for breach-of-fiduciary duty. After retaining counsel, Sawadogo filed an amended answer and counterclaim seeking a divorce; an equitable division of marital assets, property, and debt; designation as the children's sole legal custodian and residential parent; child, medical, and spousal support; attorney fees; court costs; and any other relief deemed just and equitable. Watts responded to the answer and counterclaim and proceeded to make several filings.

{¶ 3} After pretrials were held and mediation was unsuccessful, a trial was scheduled for August 2025, and the matter was referred to family evaluation services ("FES") for a forensic evaluation. In July 2025, a parenting-plan-evaluation report ("FES Report") was filed by the court-appointed evaluator ("FES Evaluator"). Watts filed a "formal objection to [the FES Report], notice of non-consent, challenge to constitutional validity, and demand for federal abstention." Therein, Watts argued that the FES Report should not be considered by the trial court. Watts claimed that any reliance on FES Report "lack[ed] due process" because it "was relied upon

without proper notice, opportunity to be heard, or verifiable evidentiary safeguards." Watts further claimed that the FES Report violated federal civil rights, involved religious discrimination, presented a conflict of interest, and amounted to collusion. Watts also claimed that the FES Evaluator "lacked proper credentials."

{¶ 4} In August 2025, Watts's amended complaint for annulment and Sawadogo's amended counterclaim for divorce proceeded to trial before a magistrate, Sawadogo filed closing arguments, and Watts filed a "notice of non-participation in closing argument by special appearance under restricted signature." While a transcript of the proceeding is not a part of this court's record, the following information can be gleaned from the magistrate's decision issued in September 2025.

{¶ 5} Watts, Sawadogo, and Sawadogo's counsel were present at the trial. Watts, who appeared late and represented himself pro se, was informed that he would be held to the same standards as an attorney. The magistrate noted, "At trial, presentation of [Watts's] evidence was extremely limited due to his inability to effectively represent himself. [Watts] struggled to effectively question or cross-examine witnesses, argue positions, and present exhibits." Watts called Sawadogo and himself as witnesses on direct examination and neither party offered any documents or exhibits. The FES Report was entered into evidence.

{¶ 6} The magistrate then discussed his findings of fact and conclusions of law. The magistrate granted Sawadogo's crossclaim for divorce on the grounds that the parties were incompatible and denied Watts's complaint after finding that he did

not prove he was entitled to an annulment. Relevant to this appeal, the magistrate also designated Sawadogo the residential parent and legal custodian of the parties' minor children.

{¶ 7} The magistrate detailed the extensive analysis that led to Sawadogo's residential-parent and legal-custodian designations. First, the magistrate explained that the matter was referred to FES to determine a parenting plan that would be in the best interests of the children and the FES Report was prepared as a result. The FES Report was admitted into evidence and was considered the direct testimony of the FES Evaluator. The magistrate noted Watts's objection to the FES Report and advised that the filing was denied to the extent that it constituted a motion. The magistrate stated, "[Watts] failed to subpoena the [FES E]valuator, call him to testify, or otherwise prosecute this motion." Next, the magistrate discussed the FES Evaluator's recommendations and the parties' testimony and filings. After applying the evidence presented to the relevant statutory provisions, the magistrate concluded that it was in the children's best interests that parental rights and responsibilities be allocated primarily to Sawadogo with Watts receiving parenting time consistent with the recommendations of the FES Evaluator.

{¶ 8} Watts objected to the magistrate's decision and any reliance on the FES Report. Watts claimed that the FES Report was not subject to cross-examination or an evidentiary hearing and its "unfounded conclusions" were based on prejudicial bias and speculation. Watts did not request or file the trial transcript.

**{¶ 9}** On November 12, 2025, the trial court issued a judgment entry overruling Watts's objection to the magistrate's decision. The trial court conducted an independent review of the record available — which did not include a transcript or an affidavit of the evidence submitted to the magistrate — and analyzed Watts's claims. The trial court found:

> [Watts] contends that the FES Report was not properly relied upon by the Magistrate because it was not subject to cross-examination and because his "objections" to the FES Report were adjudicated without an evidentiary hearing. However, [Watts] failed to subpoena the FES [E]valuator for trial pursuant to Loc.R. 39(I)(2), which states "[a] party challenging the report must subpoena the evaluator to appear for cross-examination not less than fourteen days before the hearing or trial." The FES Report and [E]valuator would have been subject to cross-examination had [Watts] followed the requirements of Loc.R. 39(I)(2). [Watts's] failure to adhere to the rules does not render the FES Report inadmissible or unreliable.
>
> . . .
>
> [Watts] points to several statements in the FES Report that he interprets as "biased" or "speculative." The FES Report merely makes observations as to [Watts's] behavior and beliefs that the [FES E]valuator believed were important in making a custody recommendation to the Court. The Court does not find that any of the observations offered in the FES Report display any bias against [Watts].
>
> As [Watts] argues in his Objection, the Court is required to consider the factors enumerated in R.C. 3109.04(F)(1) in allocating parental rights and responsibilities. The FES Report also includes an analysis of the best interest factors. While the FES Report provides some guidance for the Court in evaluating the best interest factors, the Magistrate also independently evaluated the best interest factors in the Magistrate's Decision based on the evidence presented at trial. Because there is no transcript for this Court to review, it is limited to a review of the conclusions of law made by the Magistrate and must adopt the Magistrate's factual findings. The Court does not find any error with

the Magistrate's allocation of parental rights and responsibilities based on the findings of fact made in the Magistrate's Decision.

{¶ 10} On November 13, 2025, the judgment entry of divorce was journalized.[1] The entry granted Sawadogo a divorce and dissolved the marriage contract existing between the parties. The trial court adopted the magistrate's findings regarding the children's best interests and allocated parental rights and responsibilities primarily to Sawadogo, who was designated the residential parent and legal custodian of the parties' minor children.

{¶ 11} Watts appealed the judgment entry of divorce, indicated that a transcript would be part of the record, and filed his brief prior to the record being due. Watts raised three assignments of error for this court's review.

**Assignment of Error No. 1**

The trial court abused its discretion and deprived [Watts] of due process by relying on the [FES] Report, refusing to conduct an evidentiary hearing, and subsequently destroying the underlying CCDCFS records necessary for meaningful appellate review.

**Assignment of Error No. 2**

The trial court violated Civ.R. 53(d)(4)(e) by failing to rule on [Watts's] timely objections to the magistrate's decision before adopting it as the judgment entry.

**Assignment of Error No. 3**

The trial court abused its discretion in its allocation of parental rights and responsibilities by awarding sole custody to [Sawadogo] based on an evidentiary record that has been rendered unreliable due to the destruction of evidence.

---

[1] Two nunc pro tunc entries were subsequently issued to correct the omission of an exhibit referenced in the divorce decree and a clerical error in the parties' marriage date.

This court sua sponte amended the record to an App.R. 9(A) record since (1) a transcript was not filed with Watts's objections to the magistrate's decision and (2) Watts filed his brief prior to the record being due and the filing of a transcript.

## II. Law and Analysis

{¶ 12} As an initial matter, we note that Watts acted pro se in the proceedings below and is acting pro se in the instant appeal. It is well settled that "'pro se litigants are presumed to have knowledge of the law and legal procedures and . . . are held to the same standards as litigants who are represented by counsel.'" *State ex rel. Fuller v. Mengel*, 2003-Ohio-6448, ¶ 10, quoting *Sabouri v. Ohio Dept. of Job & Family Servs.*, 145 Ohio App.3d 651, 654 (10th Dist. 2001). Indeed, "'[p]ro se litigants are not entitled to greater rights, and they must accept the results of their own mistakes.'" *Fazio v. Gruttadauria*, 2008-Ohio-4586, ¶ 9 (8th Dist.), quoting *Williams v. Lo*, 2008-Ohio-2804, ¶ 18 (10th Dist.). With these concepts in mind, we address Watts's assignments of error.

{¶ 13} For ease of analysis, we begin with Watts's second assignment of error. Therein, Watts argues that the trial court committed reversible error by failing to rule on his objections to the magistrate's decision before journalizing the judgment entry of divorce. However, our review of the record reveals that Watts's challenge is misguided. The trial court did, in fact, issue a journal entry overruling Watts's objections to the magistrate's decision prior to the filing of the final divorce decree. This entry appears on the trial court's docket on November 12, 2025, while

the judgment entry of divorce was docketed on November 13, 2025. Aside from Watts's mistaken contention that his objections were never ruled upon, Watts does not challenge the merits of the trial court's decision overruling those objections. Therefore, Watts's second assignment of error is overruled.

{¶ 14} Next, we turn to Watts's first and third assignments of error, which we review together. In both assignments of error, Watts challenges the trial court's custody determination, claiming that it "was based almost exclusively on the findings and recommendations contained in the FES Report." Watts argues that the trial court's reliance on the FES Report was erroneous and in violation of his due-process rights since (1) the FES Evaluator was not subject to cross-examination; (2) Watts was unable to review the records that were provided to the FES Evaluator for in camera inspection during the course of his investigation; and (3) the evidentiary record is unreliable because of the destruction of evidence.[2]

{¶ 15} Insofar as Watts asserts due-process challenges to the admissibility of the FES Report and the records relied upon in its preparation, we find that any purported inability to cross-examine the FES Evaluator or review the records

---

[2] Watts argues that, after his appeal was filed in November 2025, the trial court abused its discretion, structurally erred, and denied him meaningful appellate review when it destroyed the records that were produced to the FES and relied upon by the FES Evaluator in his preparation of the FES Report. Watts's claim is based upon a January 2026 judgment entry that states: "[A]ll records that Cuyahoga County Division of Child and Family Services produced and delivered, in camera, to the Court's [FES] in connection with its investigation, were destroyed." Watts filed a motion with this court, requesting that the appellate record be supplemented or the trial court be directed to reconstruct the destroyed materials. We denied Watts's motion, explaining that the documents were not presented at the August 2025 trial and, therefore, were not part of the record.

associated with the FES Report were created by Watts's own failures.   Cuyahoga C.P., Domestic Relations Loc.R. 39(I) provides:

1. The court will admit the custody evaluator's report into evidence on the court's motion.  The admitted report will be considered the direct testimony of the custody evaluator.

2. A party challenging the report must subpoena the evaluator to appear for cross-examination not less than fourteen days before the hearing or trial.

3. The court will notify the evaluator as soon as a hearing or trial date is set.  The evaluator must be available to testify on cross-examination regarding the report if timely subpoenaed by a party.

Thus, a procedural mechanism exists for the very purpose of challenging the FES Report.  However, Watts did not avail himself of that procedural mechanism.  Nor did Watts file a motion seeking release of the records or their filing under seal.  Indeed, Watts had the opportunity to challenge the FES Report and underlying records, cross-examine the FES Evaluator, admit relevant evidence, and make a record of his contentions.  However, Watts failed to issue a subpoena in compliance with the local rule or seek to review or admit the records.  Therefore, the trial court did not err in admitting and considering the FES Report.

{¶ 16} To the extent that Watts's assignments of error present factual challenges to the FES Report and the trial court's findings, Civ.R. 53(D)(3)(b)(iii) provides: "An objection to a factual finding . . . shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available."  Cuyahoga C.P., Domestic Relations Loc.R. 27(A)(3) also mandates the filing of a transcript or affidavit when a party is

objecting to factual findings in a magistrate's decision. If the objecting party does not comply with these filing requirements, "'[t]he absence of a transcript or affidavit of evidence restricts the scope of review at both the trial court and appellate levels.'" *James v. My Cute Car, LLC*, 2017-Ohio-1291, ¶ 15 (10th Dist.), quoting *Cargile v. Ohio Dept. of Adm. Servs.*, 2012-Ohio-2470, ¶ 10 (10th Dist.); *see also* Cuyahoga C.P., Domestic Relations Loc.R. 27(B)(5) ("If a party fails to file the transcript, the Court will treat the objection as if no transcript was ordered or submitted."). As noted in the judgment entry overruling Watts's objections to the magistrate's decision, the trial court must adopt the magistrate's factual findings and limit its review to the legal conclusions drawn from those facts when an objecting party fails to file a transcript or affidavit. *In re G.J.A.*, 2019-Ohio-1768, ¶ 20 (8th Dist.); *James* at *id.*

{¶ 17} Similarly, where there is no transcript submitted on appeal, there is a presumption that the trial court's proceedings were validly conducted, and an appellate court must presume that the trial court's decision is correct. *James* at *id.*, citing *Barksdale v. Ohio Dept. of Rehab. & Corr.*, 2017-Ohio-395, ¶ 17 (10th Dist.). "'The duty to provide transcripts for appellate review falls upon the appellant'" since appellants are required to show the errors they claim the trial court made and bear the burden of demonstrating those errors by reference to matters in the record. *Bd. of Edn. v. Murphy*, 2025-Ohio-1199, ¶ 9 (2d Dist.), quoting *Eubanks v. Simons*, 2018-Ohio-519, ¶ 5 (2d Dist.), and citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). "When portions of the transcript necessary for resolution of

assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings and affirm." *Knapp* at 199; *see also Univ. Hts. v. Johanan*, 2022-Ohio-2578, ¶ 12 (8th Dist.), quoting *Smith v. Smith*, 2019-Ohio-114, ¶ 13 (10th Dist.) ("'We cannot substitute our judgment for that of the trial court, presume evidence not offered, or facts not proved.  Without a transcript, we must presume the regularity of the trial court's proceedings and affirm its judgment on appellate review.'").

{¶ 18} Here, the duty to provide transcripts for review — at both the trial-court and appellate levels — falls squarely upon Watts.  The omission of transcripts significantly limited the trial court's ability to assess his objections to the magistrate's decision and continues to limit our ability to evaluate Watts's assignments of error on appeal.  Indeed, we are unable to review any witness testimony or on-the-record discussions concerning the FES Report.  Aside from information gleaned from the magistrate's decision, we are left to guess as to how and what extent testimony and evidence was utilized or objected to throughout the course of trial.  Without trial transcripts, this court must presume the validity of the lower court's proceedings.  This presumption is not undermined by any evidence in the record before this court.

{¶ 19} Watts's failures to (1) subpoena the FES Evaluator — to properly challenge the FES Report and make a record of his contentions — and (2) file the necessary transcripts — to enable the trial court to review the magistrate's findings

and this court to evaluate the trial court's judgment — cannot be excused on the basis that he is acting pro se. Based on the foregoing analysis, and without a transcript to support Watts's claims, we affirm the trial court's decision and overrule his first and third assignments of error.

{¶ 20} Judgment affirmed.

It is ordered that the appellant pay the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
TIMOTHY W. CLARY, J., CONCUR